UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HASSAN CRAWFORD,

    Plaintiff,

  v.

THE LAW OFFICES OF BRETT BORLAND, *et al.*,

    Defendants.

Case No. 1:23-cv-191
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

Plaintiff Hassan Crawford alleges that the Law Offices of Brett Borland (Law Offices) and two employees of the Law Offices—Heather Lugar and Brett Borland—engaged in debt collection practices that violate the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.; the Ohio Consumer Collection Practices Act (OCCPA), Ohio Rev. Code § 1349;[1] and the Ohio Deceptive and Unfair Trade Practices Act (ODUTPA), Ohio Rev. Code § 1345.02 et seq. (Compl., Doc. 3, #26–27). Based on allegedly improper collection efforts, he asserts four counts against the three Defendants: one count each for violating the FDCPA, OCCPA, and ODUTPA, along

---

[1] At different points in his Complaint, Crawford refers to the Ohio Consumer Sales Practices Act (OCSPA), Ohio Rev. Code § 1345, and the Ohio Consumer Collection Practices Act, Ohio Rev. Code § 1349. (*Compare* Doc. 3, #27 (alleging that Defendants violated the OCSPA) *with id.* at #26, 31 (alleging that Defendants violated the OCCPA)). The Court interprets the Complaint as alleging violations of the OCCPA, which is the more relevant statute.

with a fourth count for Intentional Infliction of Emotional Distress (IIED).[2] (*Id.* at #30–33).

Defendants have moved to dismiss Crawford's Complaint under either Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6), arguing that Crawford has not shown damages and standing, and, in the alternative, he has failed to state a claim on which relief can be granted. (Doc. 7, #48–55). For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 7). The Court thus **DISMISSES** Crawford's Complaint (Doc. 3) **WITHOUT PREJUDICE** for lack of standing.

## BACKGROUND[3]

Crawford alleges that Defendants sent him a dunning letter[4] notifying him that he owed $11,318.64 on or around February 9, 2023. (Doc. 3, #28–29). He says that he sent disputes and requests for validation of the debt to Defendants twice in February 2023. (*Id.*). But they never responded to either request and continued to attempt to collect the debt despite "actual knowledge that the amount they were

---

[2] The counts are numbered 1 (the FDCPA count), 2 (the OCCPA count), 4 (the ODUTPA count), and 5 (the IIED count). Crawford presumably meant to include a count 3—most likely a count alleging FCRA violations, given that he asserts Defendants violated FCRA elsewhere in the Complaint. (Doc. 3, #26–27).

[3] "For purposes of ruling on a motion to dismiss for lack of standing, a complaint must be viewed in the light most favorable to the plaintiff; all material allegations of the complaint must be accepted as true." *Courtney v. Smith*, 297 F.3d 455, 459 (6th Circ. 2002) (cleaned up). Following this standard, the Court recounts the allegations from the Complaint here with the caveat that, at this stage, they remain mere allegations.

[4] "A dunning letter is a notification sent to a customer, stating that it is overdue in paying an account receivable to the sender." *Dunning letter definition*, ACCOUNTINGTOOLS, https://perma.cc/8QA4-FRJL.

trying to collect was false." (*Id.* at #28–30). Accordingly, Crawford says he sustained damages "includ[ing], but [] not limited to, FDCPA [violations], defamation of character, emotional distress and damage to plaintiff's creditworthiness by other conspirators, agents, servants and employees." (*Id.* at #29).

Based on the sparse allegations described above, Crawford filed suit and moved to proceed in forma pauperis (IFP). (Doc. 1). Because he is proceeding pro se, his case was referred to a Magistrate Judge under this Court's General Order Cin 22-02. The Magistrate Judge granted Crawford's motion to proceed IFP (Order, Doc. 2) and his Complaint was entered on the docket that same day (Doc. 3). The Complaint alleges that Defendants' debt collection practices violated FCRA, the FDCPA, the OCCPA, and the ODUTPA, as well as constituting IIED.[5] (*Id.* at #26–27).

Next, Defendants moved to dismiss Crawford's Complaint for lack of standing or, in the alternative, for failure to state a claim. (Doc. 7). They say that "Crawford fails to provide any details or facts to substantiate his claims. It appears from these facts that Crawford received a letter from Defendants, he sent correspondence to Defendants in response, and nothing further happened." (*Id.* at #47). Therefore, he has not alleged enough facts to show that he suffered an actual injury, as required for standing, or to support a cause of action under any law. (*Id.*). More specifically, Defendants say Crawford has alleged no injury-in-fact because "[h]e never alleges that a third party viewed his debt information, that it was even reported to any credit reporting agency by Defendants, that his credit score suffered, or that he was denied

---

[5] *See supra* note 2 for which counts in the Complaint allege violations of which statutes.

3

credit based on the allegations in his complaint." (*Id.* at #50). And because he has not alleged that he suffered an injury-in-fact, he has not alleged the other elements of Article III standing. (*Id.* at #50–51). In the alternative, because of the same vagueness of the allegations, Defendants argue that Crawford has not alleged the requisite elements of any of his claims. (*Id.* at #51–55).

Crawford responded. (Doc. 8). He cites five cases to argue that a procedural violation of the FDCPA is an adequate injury-in-fact to support Article III standing: *Spokeo v. Robins*, 578 U.S. 330 (2016); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 761 (6th Cir. 2018); *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3rd Cir. 2019); *Napolitano v. Ragan & Ragan*, No. 15-2732, 2017 WL 3535025 (D. N.J. Aug. 17, 2017); and *Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-5646, 2018 WL 6322614 (D. N.J. Dec. 3, 2018). (*Id.* at #60–62). And he says that he has, in fact, adequately alleged the elements of his various claims. (*Id.* at #64–70). Most relevantly, he says that the Court should construe his complaint to "find that Plaintiff has alleged that defendant(s), in connection with the collection of Plaintiff's debt, communicated with a third party in relation to Plaintiff's debt, and that the communication was not for the purpose of obtaining location information." (*Id.* at #68).

Defendants have since replied. (Doc. 9). The matter is now before the Court on the Motion to Dismiss.

## LEGAL STANDARD

As noted above, Defendants move to dismiss both for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Because jurisdictional issues precede consideration of the merits, and because the Court concludes that the former are dispositive here, the Court addresses only jurisdiction in this Opinion.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "[C]hallenges to standing are properly brought under Fed. R. Civ. P. 12(b)(1) for a lack of subject-matter jurisdiction." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *2 (6th Cir. Nov. 6, 2023). And when a defendant challenges the Court's jurisdiction under Rule 12(b)(1), "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Courtney*, 297 F.3d at 459 ("[T]he plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met."). Further, a dismissal under Rule 12(b)(1) is without prejudice because it "allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of some court." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *Id.* "A *facial* attack … merely questions the sufficiency of the pleading." *Id.* "When ruling on a motion to dismiss for lack of standing or a facial challenge to its subject-matter jurisdiction under Rule 12(b)(1), the district court

5

must accept all material allegations of the complaint as true." *Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019). (citation and quotation marks omitted).

"On the other hand, when a court reviews a … *factual* attack … no presumptive truthfulness applies to the factual allegations." *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. And when reviewing a factual attack on jurisdiction courts may consider sources outside the pleadings. *Id.*("[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[T]he court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits.").

One other thing worth noting—Crawford is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require the lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

**LAW AND ANALYSIS**

The Court must have jurisdiction over this case to reach the merits. The Court agrees with Defendants, though, that jurisdiction is lacking here, as Crawford does not have standing to bring this case. So, as explained below, the Court dismisses the case without prejudice.

"Standing stems from the Constitution's mandate that federal courts may decide only 'Cases' or 'Controversies.'" *Vonderhaar v. Vill. of Evendale*, 906 F.3d 397, 400–01 (6th Cir. 2018) (citing U.S. Const. art. III, § 2, cl. 1). Consistent with that language, standing is designed to ensure that courts decide live disputes, rather than "issue advisory opinions or address statutes 'in the abstract.'" *L.W. by & through Williams v. Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023) (quoting *California v. Texas*, 141 S. Ct. 2104, 2115 (2021)).

Because standing is a prerequisite to subject-matter jurisdiction, a court may (indeed, has an obligation to) evaluate the issue at any time, even sua sponte. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). Standing requires a plaintiff to make three showings: "(1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To meet the first prong, a plaintiff must show a concrete and particularized, actual past injury or imminent future injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. By contrast, "a 'generalized

7

grievance,' no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013); *see, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the [judicial] power must be able to show ... that he has sustained or is immediately in danger of sustaining some direct injury ... and not merely that he suffers in some indefinite way in common with people generally."). And a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, 578 U.S. at 342.

The Motion to Dismiss mounts a facial attack on the Court's jurisdiction (Doc. 7, #48), so the Court treats the well-pleaded allegations in the Complaint as true. *Phillips*, 2019 WL 7372704, at *1. But, even taking those allegations as true, Crawford does not allege a cognizable injury here. As noted above, Crawford does not allege traditional physical or financial harms. Perhaps the closest he comes to any financial harm is referencing unnecessary postage costs he incurred because of Defendants' actions in his Response. (Doc. 8, #63). But that type of self-inflicted harm is not enough to confer standing without showing another concrete injury that is either current or certainly impending. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 416 (2013) ("[Plaintiff] cannot manufacture standing merely by inflicting harm on [him]sel[f] based on [his] fear of hypothetical future harm that is not certainly impending."). So Crawford must establish standing based on the other harms he alleges: "FDCPA [violations], defamation of character, emotional distress and damage to plaintiff's creditworthiness by other conspirators, agents, servants and employees." (Doc. 3, #29). Ultimately, none suffice.

8

Begin with the alleged FDCPA violations. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341. So any alleged FDCPA violation does not confer Article III standing unless Crawford can show that another, more concrete harm resulted from the statutory violation. And because Crawford seeks damages rather than injunctive relief, the risk of future harm is insufficient—the harm must have already materialized. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021) ("The risk of future harm on its own is not enough to support Article III standing for [a] damages claim."). Even reading the Complaint generously, Crawford has not alleged any such concrete harm accompanying the FDCPA violation. As Defendants point out, Crawford "never alleges that a third party viewed his debt information, that it was even reported to any credit reporting agency by Defendants, that his credit score suffered, or that he was denied credit based on the allegations in his complaint." (Doc. 7, #50). In his Response, Crawford contends that the Court should construe his complaint to "find that Plaintiff has alleged that defendant(s), in connection with the collection of Plaintiff's debt, communicated with a third party in relation to Plaintiff's debt, and that the communication was not for the purpose of obtaining location information." (Doc. 8, #68). But he never alleges any *facts* to support such an inference in his Complaint, so there is no basis for the Court to reach that conclusion. Crawford's allegations that Defendants violated the FDCPA therefore do not give rise to an injury in fact. The same goes for his allegations that

9

Defendants violated FCRA, the OCCPA, and the ODUTPA—those alleged statutory violations, standing alone, also do not support Article III standing.

The remaining injuries that Crawford posits fare no better. "In order for [a] complaint to allege jurisdiction adequately, it must contain *non-conclusory* facts which, if true, establish that the district court ha[s] jurisdiction over the dispute." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (emphasis added). Here, Crawford claims that he suffered "defamation" or other injuries to his character or creditworthiness. But Crawford has not alleged that Defendants actually communicated with any third parties about their debt collection efforts, caused inaccurate information to be added to his credit report, or otherwise harmed his credit score. Absent at least some factual allegations along these lines, his assertions of defamation-type harms (which necessarily arise from communications to others) are merely conclusory allegations of harm that do not suffice to confer standing. *Carrier Corp.*, 673 F.3d at 440.

He perhaps comes a bit closer where he alleges that he has suffered "emotional distress." (Doc. 3, #29, 33). The Supreme Court has at least left open the possibility that current, severe emotional distress stemming from the risk of future transmission of inaccurate information about Plaintiff's creditworthiness might be enough to support Article III standing. *See TransUnion*, 594 U.S. at 436 n.7 ("[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm. We take no position on whether or how such an emotional or psychological harm could

10

suffice for Article III purposes."). But even if such harm, properly pleaded, could suffice, here Crawford's conclusory emotional distress allegation is insufficient absent "non-conclusory facts" such as, for example, explaining how his severe distress manifested or pleading facts to substantiate Defendants' malicious intent. *Carrier Corp.*, 673 F.3d at 440. In short, none of the injuries Crawford alleges support Article III standing.

Crawford argues otherwise, citing several cases. None help him. In *Macy*, the Sixth Circuit affirmed the district court, holding that "a material risk of harm to the interests recognized by Congress in enacting the FDCPA" satisfied the concreteness prong of the Article III injury-in-fact inquiry. 897 F.3d at 761. But *TransUnion* abrogated that holding, as the Sixth Circuit later recognized. *Ward v. Nat'l Patient Account Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021) ("In *Macy*, we held that the plaintiffs satisfied the concreteness requirement where 'FDCPA violations created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.' 897 F.3d at 761. Recently, the Supreme Court abrogated that holding[.]"). So Crawford cannot rely on *Macy* to support his argument that an FDCPA violation resulting in a hypothetical *risk of future harm*, rather than an immediate concrete harm, can confer Article III standing for his damages claim. (Doc. 8, #61).

*Hovermale*, 2018 WL 6322614, *Napolitano*, 2017 WL 3535025, and *DiNaples*, 934 F.3d 275, are similarly unhelpful. Each of the three concluded that FDCPA violations, standing alone, constituted concrete injuries for purposes of Article III standing analysis. *Hovermale*, 2018 WL 6322614, at *5 ("Hovermale's claim that ICR

11

violated her substantive FDCPA rights by sending her a letter including the materially misleading late charges language—when ICR had no lawful right to assess late charges—constitutes a concrete injury in fact."); *Napolitano*, 2017 WL 3535025, at *7 ("[T]he debt collection letter sent to Plaintiff was allegedly deceptive by falsely implying that an attorney had meaningfully reviewed the case … Because of the alleged violation [of the FDCPA], Plaintiff was placed at risk of economic injury by potentially being deceived."); *DiNaples*, 934 F.3d at 279–80 (finding that mailing the plaintiff an envelope displaying a QR code that revealed her account number when scanned, in violation of the FDCPA, was a concrete injury even without anyone intercepting the plaintiff's mail or an imminent risk of anyone doing so). But that contradicts the logic of the Supreme Court's later decision in *TransUnion*. And because all three cases were decided before *TransUnion*, none directly engage with that case's clarification of *Spokeo*. Pure statutory violations and risk of non-imminent future harm, without more, are simply not enough. Crawford must plead existing, concrete injuries or imminent future injuries.

In sum, between the types of injuries Crawford alleges and the vagueness with which he pleads them, he has not shown that he has standing under Article III. So the Court must grant Defendants' Motion to Dismiss.

## CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 7). The Court thus **DISMISSES** Crawford's Complaint (Doc. 3) **WITHOUT**

12

**PREJUDICE** for lack of standing. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

  **SO ORDERED.**

January 10, 2024
**DATE**

        **DOUGLAS R. COLE**
        **UNITED STATES DISTRICT JUDGE**